# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAMES C. WHITWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>CORECIVIC, INC. et al.,<br><br>    Defendants. | Case No. 3:17-cv-1121<br><br>Judge Trauger<br>Magistrate Judge Newbern |

To:    The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Plaintiff James C. Whitworth's motion for temporary restraining order and preliminary injunction (Doc. No. 8) is before the Magistrate Judge for a report and recommendation. For the reasons that follow, the undersigned RECOMMENDS that the motion be DENIED.

**I.    Background**

On August 7, 2017, Whitworth filed a verified complaint for civil rights violations under 42 U.S.C. § 1983 against CoreCivic, Inc. (CoreCivic) and Correct Care Solutions, LLC (CCS) alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights by virtue of their "official policies and customs of ignoring and/or substantially delaying requests for medical treatment." (Doc. No. 1, PageID# 7.) After conducting an initial review under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), the Court found that Whitworth had sufficiently stated a claim of deliberate indifference in violation of the Eighth Amendment and directed that the complaint be served on Defendants. (Doc. No. 5.) Shortly thereafter, Whitworth

filed this motion for injunctive relief. (Doc. No. 8.) CCS and CoreCivic filed responses in opposition (Doc. Nos. 20, 29) and answered the complaint (Doc. Nos. 30, 31).

Whitworth timely filed a motion to amend the complaint, to which Defendants did not respond. (Doc. Nos. 38.) The motion was granted, and Defendants answered the amended complaint.[1] (Doc. Nos. 68, 72, 73.) Because the amended complaint seeks the same injunctive relief that Whitworth sought in his original complaint, the Court will consider the amended complaint as the operative pleading for purposes of Whitworth's motion, although that motion preceded the amended complaint.

Whitworth alleges that CoreCivic contracts with CCS to provide medical service at the Trousdale Turner Correctional Center (Trousdale), where Whitworth was housed from April 28, 2016, to May 24, 2017. (Doc. No. 68, PageID# 1162, ¶¶ 16, 17.) From April 28, 2016, to August, 2016, Whitworth made "numerous attempts to consult with the medical staff regarding the need for after care of a previous spine injury that . . . resulted in surgery to fuse the C5 and C6 vertebrae [due to] a ruptured disc" and regarding "appropriate preventive care due to the risk of another injury." (*Id.* at ¶ 18.) Because there was no "'sick call' box" provided to request medical appointments where Whitworth was housed, he made in-person sick call requests when he encountered nurses in his unit. (*Id.*) Whitworth explained "that there was a high risk of another injury if proper care was not exercised" and that Whitworth's "medical needs could easily be confirmed upon inspection of [his] TDOC medical file," which contained records from "Williamson Medical Center, Vanderbilt Bone and Joint Clinic, . . . x-rays and documentation from Northwest Correctional Complex." (*Id.* at ¶¶ 19, 20.) Whitworth alleges that, between August

---

[1] Whitworth recently filed a motion to supplement the amended complaint, which is pending. (Doc. No. 74.)

and September 2016, he "sustained a severe injury to his spine . . . [d]ue to the lack of preventive medical treatment." (*Id.* at ¶ 21.) The nurses with whom he spoke responded that they "would look into it and get back with him, but never did." (*Id.*) Whitworth "continued to submit 'sick calls'" when, "on rare occasion," he had access to the "'sick call' box," which "was only available at the chow hall" and which was often unavailable because inmates were fed in their housing units during prison lockdowns. (*Id.* at ¶ 22.)

In September 2016, Whitworth began "experiencing tremendous pain, shortness of breath, and [he broke] out in a rash due to the continuous stress of chronic pain." (*Id.* at ¶ 23.) Whitworth informed his pod officer that he needed an "emergency sick call." (*Id.*) When the officer called the clinic, he was told to inform Whitworth that "he would have to wait for [a]while" because Trousdale was on lockdown. (*Id.*) After waiting three hours, Whitworth was escorted to the clinic. (*Id.*) When he got to the clinic, there were two other inmates locked in the waiting area who told Whitworth that they had been waiting for hours. (*Id.*) Whitworth alleges that he "could see the on call nurse sitting behind the counter eating snacks" and, when Whitworth told her that he "desperately needed help," she responded that "the more [Whitworth] ask[ed] the longer [he] would wait." (*Id.*) Because he "could not endure the excruciating pain" caused by "sitting on the steel benches for six hours and being emotionally distressed" over not receiving medical attention, Whitworth returned to his cell without being seen. (*Id.*)

Between October 2016 and May 24, 2017, Whitworth "was called to the clinic numerous times to see an on duty nurse." (*Id.* at ¶ 24.) At these visits, Whitworth explained his "concern and fear" that his "extreme symptoms and chronic pain" were progressively worsening. (*Id.*) Whitworth alleges that his symptoms "include but are not limited to chronic neck pain radiating through [his] right shoulder and down [his] right arm, stiff neck, dizziness, restricted breathing,

3

numbness in hands and feet, tingling lower legs, progressively worsening bowel and urinary issues, lower back pain, headaches, [and] loss of balance," all of which are "contribut[ing] to high anxiety and sleepless nights for almost the past year." (*Id.*) At these visits, Whitworth was never given a physical examination and, while "[e]ach nurse would agree that [he] should be referred to the nurse practitioner for referral to a specialist," this did not happen. (*Id.* at ¶¶ 25, 26.) Whitworth alleges that this is the "clear policy and custom of the Defendants to ignore the inmates serious medical needs." (*Id.* at ¶ 26.)

Whitworth alleges that, at a clinic visit on March 13, 2017, he explained to the nurse that he needed medical attention. (*Id.* at ¶ 27.) When Nurse Practitioner Ruckman happened to come into the clinic, the nurse treating Whitworth asked Ruckman to review Whitworth's file. (*Id.*) After reviewing Whitworth's file, Ruckman "immediately stated that [Whitworth] has a history of spine problems and needed to be referred to [his] original surgeon, Dr. Michael McNimara at Vanderbilt Bone and Joint Clinic, for evaluation and treatment" because "other neurologist[s] usually wouldn't work on another doctor[']s patient when it came to spinal injuries." (*Id.*) Whitworth was never referred for follow-up and "began resubmitting 'sick calls,'" which again frequently went unanswered. (*Id.* at ¶ 28.) "The only answer he would get from the medical and security staff was that 'it just takes time.'" (*Id.*) Whitworth filed a "grievance explaining the severe and debilitating, and painful nature of the injuries to only get a response from . . . Cynthia Pratt RN/HAS recommending [that he] submit more 'sick calls,' ignoring [Ruckman's] recommendation," and commenting that Whitworth "had been seen and issued Ibuprofen per 'protocol.'" (*Id.* at ¶ 29.)

Between April 28, 2016, and May 24, 2017, "the defendants made submitting 'sick call request[s]' unavailable to [Whitworth] on many different occasions, some exceeding 3 weeks." (*Id.* at ¶ 30.) Additionally, during this time, "numerous sick calls went unanswered or were

canceled." (*Id.* at ¶ 32.) When Whitworth asked why sick calls that are cancelled because of a "lock-down" do not get rescheduled, "the officer in the clinic [said] 'that's just the way they do things here.'" (*Id.*)

Whitworth states that, in early 2017, neither the nursing staff nor the grievance department "had keys to the 'sick call' box or [the] 'grievance' box" and could not open them to see if inmates had submitted sick call requests. (*Id.* at ¶ 31.) Inmates were not warned not to use these boxes to request medical treatment and, when Whitworth asked a nurse during a "med call" why the sick call requests left in the boxes had not been answered, "she responded by laughing and saying 'we haven't ever had keys to that box.'" (*Id.*)

On May 24, 2017, Whitworth was transferred to the South Central Correctional Facility (South Central), which CoreCivic operates and which Whitworth alleges obtains medical services from CCS under contract with CoreCivic. (*Id.* at ¶ 33.) After he arrived at South Central, Whitworth was seen by Nurse Practitioner Kelly who "promised an on[-]site x-ray and referral to the in-house doctor, Dr. Soldo." (*Id.* at ¶ 34.) Kelly explained that an x-ray would not show any nerve or spinal cord damage "but was the next step in the process" and that Dr. Soldo would have to make the referral to an outside specialist and prescribe any pain medication. (*Id.*) On June 29, 2017, "an on-site x-ray was performed," but, as of August 2, 2017, medical staff had not scheduled a follow-up visit or otherwise communicated with Whitworth. (*Id.*) Whitworth states that he "continues to suffer from the chronic pain, deteriorating health and many other progressively worsening symptoms, along with the mental anguish and anxiety from these symptoms and the fear of life threatening serious medical needs or permanent injury." (*Id.* at ¶ 35.)

In the pending motion, Whitworth seeks a temporary restraining order and preliminary injunction "enjoining the Defendants from continuing to deny [him] adequate medical care for

5

[his] serious medical needs by securing an immediate appointment with his previous surgeon at [the] Vanderbilt Bone and Joint Clinic in Franklin, TN, as recommended by the health care provider on March 13, 2017." (Doc. No. 8, PageID# 32.) Whitworth argues that he has a substantial likelihood of success on the merits because Defendants are depriving him of adequate and readily available medical care. He states that he has and will continue to suffer irreparable injury because he is not receiving treatment and that Defendants will suffer no harm if he is granted the relief he seeks because they are obliged to provide constitutionally adequate medical care. Finally, Whitworth states that the public interest favors granting relief because protecting constitutional rights is always in the public interest. (Doc. No. 10.)

CoreCivic argues that Whitworth is not entitled to injunctive relief as does not have a substantial likelihood of success on the merits because he has access to medical care and his disagreement with the treatment he is receiving is insufficient to state a constitutional violation. CoreCivic states that Whitworth has not demonstrated that, in the absence of an injunction, he will suffer an actual and imminent injury. It also argues that "the interests of third parties and the public at large weigh against" granting relief because it would require judicial intervention in the day-to-day operations of the prisons. (Doc. No. 20.) In support of its motion, CoreCivic has submitted Whitworth's medical records from May 2017 through September 11, 2017, which establish that Whitworth had two medical visits in both May and June and one medical visit each in August and September. (Doc. No. 22-1, PageID# 135–36.) It also submitted a Chronic Care Clinic Encounter Log, which establishes that Whitworth was scheduled for an appointment with a medical provider on November 6, 2017.[2] (Doc. No. 22-2.)

---

[2] Because these documents were filed under seal, the Court does not discuss their contents, other than to note the dates and number of appointments.

6

CCS argues that, while it provided medical care when Whitworth was housed at Trousdale, it does not provide medical care at South Central.[3] (Doc. No. 29.) In support of this claim, CCS filed the declaration of Cynthia Pratt, the Health Services Administrator for CCS at Trousdale, who states that CCS does not provide medical services to inmates housed at South Central. (Doc. No. 29-1.) CCS argues that it therefore cannot be enjoined from continuing to deny Whitworth adequate medical care because it does not provide care at the institution where he is currently housed. (Doc. No. 29.)

For the reasons that follow, the Magistrate Judge recommends that Whitworth's motion be DENIED.

**II.     Legal Standard**

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The issuance of preliminary injunctive relief is committed to the trial court's discretion. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002). "[T]he preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it," *Leary*, 228 F.3d at 739. It is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739.

---

[3]     CoreCivic acknowledges that it operates Trousdale and South Central under contract with the Tennessee Department of Corrections. (Doc. No. 20, PageID# 85.)

In determining whether to grant a preliminary injunction or temporary restraining order, the court must consider four factors: (1) whether the moving party demonstrates a "strong" likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury if the injunction is not granted; (3) whether substantial harm to others will result if the injunction is granted; and (4) whether the public interest will be served by the issuance of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *see also Ohio Republican Party v. Brunner,* 543 F.3d. 357, 361 (6th Cir. 2008) (noting that the same four factors apply in determining whether to grant a temporary restraining order). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary*, 228 F.3d at 736; *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). However, "the demonstration of some irreparable injury is a sine qua non for issuance of an injunction." *Patio Enclosures, Inc.*, 39 F. App'x at 967 (citing *Friendship Material, Inc.v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction to obtain affirmative relief. Because the purpose of injunctive relief is "to maintain the statute quo until a trial on the merits can be held," *Univ. of Texas*, 451 U.S. at 395, courts have identified three types preliminary injunctions that are disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of the trial on the merits." *Taylor v. Corizon Med. Corp.*, No. 2:17-cv-12271, 2018 WL 2437561, at *2 (E.D. Mich. May 10,

2018), *report and recommendation adopted*, No. 17-12271, 2018 WL 2431704 (E.D. Mich. May 30, 2018) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)). Moreover, where a prisoner seeks an order enjoining state prison officials, the court must avoid "intrud[ing] significantly into the prerogative of state correctional officials." *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). Indeed, the Prison Litigation Reform Act requires that preliminary injunctive relief afforded in the context of prison litigation "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires the preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Finally, a transfer to another prison moots a prisoner's claim for injunctive relief addressing prison conditions if the alleged risk of harm does not travel with the prisoner to his new institution. *Compare Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010) (finding injunctive relief claim not mooted by transfer when challenged kosher meal policy also applied to plaintiff at new prison), *with Proctor v. Applegate*, 661 F. Supp. 2d 743, 763 (E.D. Mich. 2009) (finding injunctive relief claim moot where none of the alleged acts that took place and none of the named defendants was employed at a facility where any plaintiff was then housed). "Underlying [this] rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct." *Proctor*, 661 F. Supp. 2d at 762; *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding claims for declaratory and injunctive relief regarding legal mail moot because prisoner was no longer at the institution that searched his mail).

9

### III. Analysis

What Whitworth seeks by his motion is not maintenance of the status quo pending trial. Instead, he asks the Court to order Defendants to stop denying him medical care and get him an "immediate appointment" with a surgeon to treat his chronic pain. Whitworth's motion thus falls into the category of "particularly disfavored" requests for injunctive relief and is subject to the Court's heightened scrutiny. *Schrier*, 427 F.3d at 1259.

#### A. Whitworth's Claim for Relief Against CCS

Whitworth's claim for injunctive relief against CCS did not travel with him when he was transferred from Trousdale to South Central. CCS does not provide medical services at South Central. Accordingly, Whitworth is no longer in danger of suffering injury from CCS's actions, and the Court can no longer order CCS to provide the relief Whitworth seeks. His claim against CCS is therefore moot. *Proctor*, 661 F. Supp. 2d at 762; *Kensu v. Haigh*, 87 F.3d at 175.

#### B. Whitworth's Claim for Relief Against CoreCivic

Because CoreCivic operates the facility where Whitworth is currently housed, his claim for injunctive relief against it remains ripe for decision. The Court therefore considers it under the four-factor test prescribed by the Sixth Circuit. *Leary*, 228 F.3d at 736; *Ohio Republican Party*, 543 F.3d. at 361.

##### 1. Likelihood of Success on the Merits

Whitworth states that he is likely to succeed on the merits of his claim because he has been denied adequate medical care. CoreCivic suggests that Whitworth's allegations can be divided into two parts—those addressing his access to care and those addressing quality of care provided. CoreCivic argues that Whitworth's own allegations establish that he had access to medical care

and, to the extent he disagrees with the nature or quality of the treatment he received, that disagreement does not raise a constitutional claim.

To establish a likelihood of success on the merits, Whitworth must show that CoreCivic acted with "'deliberate indifference' to a substantial risk of serious harm." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994)); *Grabow v. Cty. of Macomb*, 580 F. App'x. 300, 306–07 (6th Cir. 2014). "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). The standard for deliberate indifference has both a subjective and objective component; to prove his claim, Whitworth must establish both. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that Whitworth show the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (noting this may include a showing that the inmate is "incarcerated under conditions positin a substantial risk of serious harm"). The subjective component requires him to show that prison officials acted with "a sufficiently culpable state of mind in denying medical care." *Id*. The officials must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Inadvertent" or "negligent" failures in care do not state a claim, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 105–06.

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment rarely will support a deliberate indifference claim. *See Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95–6666, 1996 WL 627724, at

*1 (6th Cir. Oct. 29, 1996). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014) (noting that "[c]ourts are generally reluctant to second guess the medical judgment of prison medical officials"); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x. 720, 727 (6th Cir. 2007). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x. 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Whitworth did not submit any medical records or other evidence to show that he is being denied medical care. However, the allegations in Whitworth's verified complaint suggest that he has received at least some medical care.[4] For example, Whitworth states that, while housed at Trousdale, he was seen at "sick calls;" that, "[b]etween October 2016 and May 24th 2017 [he] was called to the clinic numerous times to see an on duty nurse;" and that, after Whitworth was transferred to South Central, he received an onsite x-ray and was seen by the nurse practitioner. The evidence submitted by CoreCivic demonstrates that, while housed at South Central, Whitworth visited the clinic twice in both May and June, once in August and September, and that an appointment was made for him to see a medical provider after that. There is no evidence now in the record to support Whitworth's claim that he needs more access to medical care other than his opinion that the amount of care he is receiving is inadequate.

---

[4] There is no disputing that [a verified] complaint may be the basis for a preliminary injunction . . . ." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012).

Whitworth's quality-of-care claim apparently relies, at least in part, on Trousdale Nurse Practitioner Ruckman's statement that Whitworth should be seen by his surgeon at the Vanderbilt Bone and Joint Clinic because "other neurologist[s] usually wouldn't work on another doctor[']s patient when it came to spinal injuries." (Doc. No. 68, ¶ 28.) Whitworth states that no appointment with his surgeon was ever scheduled. Whitworth also states that South Central Nurse Practitioner Kelly "promised an on[-]site x-ray and referral to the in-house doctor, Dr. Soldo." (*Id.* at ¶ 34.) The x-ray was taken, but no referral to Dr. Soldo had been made by the time Whitworth filed his motion. (*Id.*)

Generally, a difference in judgment as to the appropriateness of a diagnosis or treatment "is insufficient to state a deliberate indifference claim." *Shehee v. Saginaw Cty.*, 86 F. Supp. 3d 704, 714–15 (E.D. Mich. 2015). Here, it appears that Whitworth's disagreement is not with the suggested plan of treatment, but with the fact that the proposed referrals to outside doctors were not actually made. Ultimately, however, Whitworth's claim is still a disagreement with the treatment he received. While the recommendations made by Ruckman and Soldo may support Whitworth's Eighth Amendment claim, they are not sufficient to demonstrate a likelihood of success on the merits at this juncture.

2. **Irreparable Harm**

To obtain injunctive relief, a "plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury." *Patio Enclosures, Inc*, 39 F. App'x at 969. The harm must be "actual and imminent," not "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Further, a plaintiff's harm from the denial of an injunction is irreparable only if it is not fully compensable by monetary damages. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

In evaluating the nature of the harm posed, a court must evaluate three factors: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Rouse v. Caruso*, No. CIV 06-10961, 2007 WL 909583, at *4 (E.D. Mich. Mar. 23, 2007) (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)).

Whitworth argues that "the literature [attached to his motion as Exhibit A and B] supports the idea that [he] will suffer irreparable harm for each day he is denied adequate medical treatment." (Doc. No. 10, PageID# 48.) This literature consists of printed content from the Denver Spin Surgeons and Mayo Clinic websites regarding back and neck pain and herniated disks. (*Id.* at PageID# 52–58.) While this information offers general descriptions of the conditions Whitworth alleges, it does not offer evidence to suggest that he will suffer specific, immediate, and irreparable harm if he does not obtain injunctive relief. Neither do Whitworth's general allegations of "deteriorating health" and "progressively worsening symptoms." (Doc. No. 10, PageID# 42) Indeed, he argues only that the literature he has attached to his motion supports the "idea" that he will suffer irreparable harm. But an idea of harm is not enough to support an injunction. Whitworth has not established that irreparable injury will result if he does not obtain injunctive relief.

### 3. Harm to Others and the Public

Whitworth argues that CoreCivic will not be harmed and the public interest will be served if an injunction issues. First, Whitworth argues that CoreCivic has an obligation to provide him with medical care and cannot be harmed by the Court ordering it to do what is already required of it. Second, Whitworth argues that the public interest is always served by protecting constitutional rights. CoreCivic argues that the interests of the public and others are not served by judicial interference in the operation of prisons.

The interests of identifiable third parties and the public weigh against issuance of the requested injunction. Whitworth is correct, of course, that "the public interest is promoted by the robust enforcement of constitutional rights." *Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013). However, courts have long expressed reluctance to be involved "in the day-to-day management of prisons." *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Balancing these interests, and "in the absence of a likely constitutional violation, . . . separation of powers and federalism strongly discourage the federal courts from entangling themselves in the administration of state prison health care systems." *Rhinehart*, 509 F. App'x at 516. Thus, the public interest in effective prison administration will weigh against injunctive relief if there has not been a sufficient showing of constitutional harm. Whitworth has not made a sufficient showing to overcome that interest at this stage of the litigation.

## IV. Conclusion

The four factors that the Court must consider in deciding whether to order injunctive relief all weigh against granting Whitworth's motion. As a result, and for the reasons explained above, the undersigned Magistrate Judge RECOMMENDS that Whitworth's motion for temporary restraining order and preliminary injunction (Doc. No. 8) be DENIED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 15th day of August, 2018.

                                                                       */s/ Alistair E. Newbern*
                                                                       ALISTAIR E. NEWBERN
                                                                       United States Magistrate Judge